IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OBADIAH LEVI FONTAINE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:13-cv-3635-D |
| | § | |
| DALLAS COUNTY COMMUNITY COLLEGE DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

On July 25, 2014, Defendant Dallas County Community College District ("Defendant") filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). *See* Dkt. No. 31. Chief Judge Sidney A. Fitzwater referred the motion to the undersigned United States Magistrate Judge for recommendation. *See* Dkt. No. 41. Plaintiff Obadiah Levi Fontaine ("Plaintiff") filed a response, *see* Dkt. No. 43, Defendant filed a reply, *see* Dkt. No. 45, and the motion is ripe for determination.

After a careful review of the parties' submissions and evidence in the record, the undersigned recommends that summary judgment be granted against Plaintiff and that Plaintiff's complaint be dismissed with prejudice.

**Background**

The summary judgment evidence – when all facts are viewed and all reasonable inferences are drawn in the light most favorable to Plaintiff and when all disputed factual controversies are resolved in Plaintiff's favor as the nonmoving party – shows

the following for purposes of resolving Defendant's Motion for Summary Judgment [Dkt. No. 31].

Plaintiff sued Defendant under Title VI of the Civil Rights Act of 1964, claiming that his Title IV federal financial student aid disbursement was improperly delayed based on his race. *See* Dkt. No. 3. He generally contends that he was initially denied student aid, Pell Grant, and book money disbursement "by ways of lies and deception" and later forced to provide documents and information that were not required of similarly-situated white students. *Id.* at 1.

Plaintiff claims that his federal aid was unreasonably delayed and that he was required to provide certain documents and proof that Defendant did not require of other students. Plaintiff applied for financial aid for the 2012-2013 school year on or about February 11, 2013. *See* Dkt. No. 34-1 at 10. His financial aid was initially delayed because there was a discrepancy in tax information provided by Plaintiff, because Plaintiff allegedly failed to provide information regarding selective service registration, and because Plaintiff changed his name. *See id.* at 13-14. These items were quickly addressed when Plaintiff provided additional information. *See id.*

But the financial aid was delayed for a more significant period of time because Department of Education records indicated that Plaintiff had defaulted on a prior student loan. *See id* at 10-11. Plaintiff worked to resolve the alleged unpaid loan, and a June 11, 2013 letter was eventually sent by the Department of Education, reporting that Plaintiff qualified for "discharge, or partial discharge" of the loan. *Id.* at 189. Although Plaintiff believed that the correspondence should have resulted in the

immediate release of his financial aid, representatives of Defendant decided that they required additional assurance that the purported default was no longer a hindrance to Plaintiff's eligibility. *See id.* at 11-12, 288-90, 298-99. After additional efforts by Plaintiff and Defendant, the Department of Education clarified that the alleged default was not a bar to Plaintiff's eligibility, and Defendant cleared the loan default issue on or about June 24, 2013. *See id.* On or about July 8, 2013, Plaintiff's 2012-2013 financial aid for the Spring and Summer I semesters was disbursed. *See id.* at 13.

But Plaintiff's remaining financial aid for the 2012-2013 school year was not released at that time. *See id.* at 14-15. Instead, Defendant determined that Plaintiff's high school graduation had to be confirmed by way of a high school transcript pursuant to a July 1, 2012 regulation of the Department of Education and its own policies. *See id.* at 15-17; Dkt. No. 44 at 8. Because Plaintiff's high school – the Kaiserslautern American High School in Kaiserslautern, Germany – was not within the list of schools on the online drop-down menu of the Free Application for Federal Student Aid application, Plaintiff did not have six credits of college-level courses, and, due to the "unusual" circumstances of Plaintiff's attendance at the high school while on active military duty and October graduation date, Defendant required proof of graduation through a high school transcript. Dkt. No. 34-1 at 15-16.

Plaintiff contends that Defendant has never required any of the other students who received Title IV federal student aid, Pell Grants, or book disbursements between January 2013 and July 2013 to provide a high school transcript. *See* Dkt. No. 3 at 1; Dkt. No. 44 at 11-12, 25; Dkt. No. 34-1 at 331, 335-36. After additional effort by

Plaintiff and representatives of Defendant, Defendant received oral confirmation of Plaintiff's graduation status and disbursed the remaining funds for the Summer II semester of the 2012-2013 school year on September 17, 2013. *See id.* at 17-18. Plaintiff admits that he eventually received all of the financial aid for which he was entitled. *See* Dkt. No. 34-1 at 365, 367.

Plaintiff applied for financial aid for the 2013-2014 school year on or about July 1, 2013. *See id.* at 53. But the disbursement of his financial aid for this school year was also delayed. The undisputed summary judgment evidence establishes that Plaintiff's application was selected by the Department of Education for additional verification. *See id.* at 18-19 & 131. Plaintiff provided documentation to the Department of Education, some of which was rejected, and Plaintiff eventually completed the verification process on October 31, 2013. *See id.* at 19-20. On November 6, 2013, the Pell Grant funds were transmitted to Plaintiff's account, and they were released on November 11, 2013. *See id.* at 20. Again, Plaintiff concedes that he has received all financial aid to which he was entitled for the 2013-2014 school year. *See id.* at 372-73.

In this lawsuit, Plaintiff seeks punitive damages to punish the "willful [and] malicious" acts of Cynthia Butler, Victoria Rae, James Huebner, and Pam Shuttlesworth. *Id.* at 333-34, 371-72. He contends that the numerous roadblocks placed before him in his attempt to obtain financial aid was a result of racial animus and in retaliation for his tireless efforts to assert his rights. *See id.* at 328-31. That is, Plaintiff urges that, "[i]f I would have been a married, white, honorably discharged veteran, male, I'm quite certain that I would have got this federal student aid without going

through all these changes." *Id.* at 329; *see also* Dkt. No. 3 at 1 ("If I were a white 58 year old honorably discharged veteran in need of federal student aid the DCCD administrative staff would have intervened upon his request, and Ms. Butler and Mrs. Rae would have been far more accommodating.").

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the

...

y

w

light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment,"*Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the

part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

The verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent that such pleadings comport with the requirements of Rule 56(e). *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.").

Title VI provides that:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d. Private individuals may bring claims under Title VI for both injunctive relief and damages. *See Alexander v. Sandoval,* 532 U.S. 275, 279 (2001). To prevail on a claim for relief under Title VI, a private litigant must prove that 1) the defendant engaged in intentional discrimination based on race, color, or national origin and 2) the defendant received federal financial assistance. *See id.* at 280; *Pathria v. University of Tex. Health Sci. Ctr. at San Antonio*, 531 F. App'x 454, 455 (5th Cir. 2013). Intentional discrimination encompasses practices by which the actor intended to treat similarly situated persons differently solely on the basis of national origin, color, or

race. *See Canutillo Indep. Sch. Dist. v. Leija,* 101 F.3d 393, 397 (5th Cir. 1996).

Title VI claims are reviewed using the same burden-shifting analysis applicable to Title VII claims. *See DeLeon v. City of Dallas,* No. 3:02-cv-1097-K, 2008 WL 2941245, at *3 (N.D. Tex. July 25, 2008) (citing cases). This analysis, which is intended to determine whether intentional discrimination is present, was originally articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973). *See id.* Under the *McDonnell Douglas* test, a plaintiff must demonstrate a *prima facie* case of discrimination, and the defendant must then articulate a legitimate, nondiscriminatory reason for its decision. *See Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 341 (5th Cir. 2005); *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 352 (5th Cir. 2005). To establish a *prima facie* case of Title VI discrimination, a plaintiff must show that he is a member of a protected class, he suffered an adverse action at the hands of a defendant in pursuit of his education, he was qualified to continue in pursuit of his education, and he was treated differently from similarly situated students who were not members of his protected class. *See, e.g., Mawle v. Texas A&M University Kingsville,* No. CC-08-64, 2010 WL 1782214, at *13 (S.D. Tex. Apr. 30, 2010).

If a plaintiff make a *prima facie* case, and if the defendant then meets its burden of production in articulating a legitimate, non-discriminatory reason for its decision, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either 1) that the defendant's reason is not true but is instead a pretext for discrimination (pretext alternative) or 2) that the defendant's reason, while true, is only one of the reasons for its conduct and another motivating factor is the plaintiff's

protected characteristic (mixed-motive alternative). *See Keelan,* 407 F.3d at 341; *see also Desert Palace, Inc. v. Costa,* 539 U.S. 90, 97-99 (2003).

Title VI also prohibits retaliation for exercising a right protected by that title, such as complaining about discriminatory behavior. *See* 34 C.F.R. § 100.7(e). "To establish a *prima facie* case of unlawful retaliation, [a] plaintiff must show (1) that [the plaintiff] engaged in protected activity, (2) that [the plaintiff] suffered a material adverse action, and (3) that a causal link exists between the protected activity and the adverse action." *Bisong v. Univ. of Houston,* 493 F. Supp. 2d 896, 912 (S.D. Tex. 2007).

**Analysis**

<u>Intentional Discrimination</u>

Initially, Plaintiff has failed to state a *prima facie* case of discrimination. Discriminatory intent may be proven, among other ways, by departures from procedural norms, a history of discrimination against others similarly situated, or by circumstantial evidence, such as a pattern of conduct inexplicable on grounds other than race. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 265-66 (1977). None of these factors is present in this case. Plaintiff's complaint and the summary judgment record document a number of separate acts by Defendant and its representatives that delayed Plaintiff's financial aid and that Plaintiff believes were taken for discriminatory or retaliatory purposes.

But the complaint and summary judgment evidence do not contain any factual allegations that could demonstrate discriminatory or retaliatory intent on the part of Defendant or its representatives or any evidence to refute Defendant's non-

-9-

discriminatory rationale for its conduct. Plaintiff does not cite any racially-charged statements, raises no accusations that another specific student received different treatment, provides no evidence that he was the only person to be treated in this manner, and does not include any other indicator – other than his assertions – that the Defendant's acts were taken with unlawful motives. Plaintiff concedes as much. *See* Dkt. No. 34-1 at 341-42. Instead, Plaintiff repeatedly asserts that his financial aid was delayed and that he was required to provide significant information "clearly due to his race as a 'Black-Male.'" Dkt. No. 43 at 7. He urges that "the evidence is absolutely irrefutable that the Plaintiff was the soul target of the Defendants to discriminate against because of his race of being a Black African American Male concerned with receiving a Title IV Federal Student Aid/Pell Grant of approximately $5,500.00 from the Federal Government." *Id.* at 11-12. Plaintiff contends, without evidence, that no other recipient of federal student aid at the Dallas County Community College District from January 2013 to November 2013 was required to provide a high school transcript and then ascribes this alleged unequal treatment to racial animus. *See id.* at 3; *see also* Dkt. No. 3 at 1.

To establish discrimination under Title VI, the mere fact that Plaintiff might believe that these acts were taken for discriminatory or retaliatory reasons is not enough. *See Subbiah v. The University of Texas at Dallas*, No. 3:10-cv-115-B, 2011 WL 1771806, at *6 (N.D. Tex. May 10, 2011) (citing *Richards v. JRK Prop. Holdings,* 405 F. App'x 829, 831 (5th Cir. 2010)). Plaintiff's subjective opinion is insufficient to create a triable issue. *See Swanson v. General Servs. Admin.,* 110 F.3d 1180, 1189 (5th Cir.

1997) (holding that a plaintiff's subjective opinion, without more, is insufficient to establish a claim of discrimination); *Eaves v. K-Mart Corp.,* 193 F. Supp. 2d 887, 893 (S.D. Miss. 2001) (same).

Even presuming a *prima facie* case of racial discrimination, the undersigned concludes that Defendant has adequately rebutted any presumption of discrimination by articulating a legitimate, nondiscriminatory reason for its conduct under the second step of the *McDonnell Douglas* framework. Defendant states that the delay in awarding financial aid for the 2012-2013 and the 2013-2014 school years, and the additional steps required of Plaintiff, were due to deficiencies in Plaintiff's financial aid applications, an unpaid loan attributed to Plaintiff, the selection of Plaintiff's application for verification by the Department of Education, and regulations that require the validation of a high school diploma where questions arise about its authenticity. *See* Dkt. No. 34-1 at 10-22, 286-95. Plaintiff has offered no contradictory factual assertions – aside from his subjective belief that he was targeted due to his race – to counter Defendant's nondiscriminatory rationale for its conduct.

The undersigned therefore concludes that no genuine dispute of material fact is present and that Defendant is entitled to judgment as a matter of law on Plaintiff's Title VI intentional discrimination claim.

<u>Retaliation</u>

In his complaint and throughout this litigation, Plaintiff generally accuses representatives of Defendant of treating him poorly in retaliation for his assertion of his rights. That is, he contends that Victoria Rae, Director of Financial Aid at North Lake

College, "retaliated because she was in authority" and "[b]ecause of the way that I challenged her and the way she was communicating with me." *Id.* at 333. But attending meetings with financial aid officials, emailing complaints to them, and questioning their motives is not the same as making a formal complaint, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VI. *See generally Shannon v. Henderson,* 275 F.3d 42 (Table), 2001 WL 1223633, at *3 (5th Cir. Sept. 25, 2001) (to establish retaliation under the Rehabilitation Act, plaintiff must be engaged in "protected activity"); *see also Wooderts v. Dallas I.S.D.,* No. 3:10-cv-573-P, 2010 WL 2160144, at *3 (N.D. Tex. May 3, 2010), *rec. adopted,* 2010 WL 2160142 (N.D. Tex. May 26, 2010) (same). Accordingly, Plaintiff has failed to submit summary judgment evidence to establish that he engaged in any protected activity, that he suffered a material adverse action, or that a causal link exists between the protected activity and the adverse action. Accordingly, he has failed to raise a genuine dispute of material fact regarding any retaliation claim under Title VI.

Damages

Plaintiff requests only punitive damages. That is, Plaintiff repeatedly admits that he has been fully compensated, has received all financial aid which he was due, and seeks recovery only to punish Defendant for its conduct. *See* Dkt. No. 34-1 at 332-33, 372-73. However, the United States Supreme Court has held that punitive damages are not available under Title VI. *See Barnes v. Gorman,* 536 U.S. 181, 188-89 (2002); *see also Minnis v. Bd. of Supers. of La. State Univ. & Agric. & Mech. Coll.,* 972 F. Supp. 2d 878, 889 (M.D. La. 2013). Plaintiff's claims for punitive damages therefore fail to raise

a material issue of fact, and Defendant's motion for summary judgment should be granted.

## Recommendation

The Court should grant Defendant's Motion for Summary Judgment [Dkt. No. 31], enter judgment against Plaintiff on all of his claims pursuant to Federal Rules of Civil Procedure 56(b), and dismiss Plaintiff's Complaint [Dkt. No. 3] with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 27, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE